

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KRISTEN K. WHITE, individually and on behalf of others similarly situated | CIVIL ACTION<br><br>NO. 99-3804 |
| VERSUS | SECTION "N" (4) |
| IMPERIAL ADJUSTMENT CORPORATION<br>IMPERIAL FIRE AND CASUALTY COMPANY<br>EQUIFAX CREDIT INFORMATION SERVICES, INC.<br>and EQUIFAX, INC. | JUDGE ENGELHARDT<br>MAG. ROBY |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS SETTLEMENT

NOW INTO COURT through undersigned counsel comes representative plaintiff Kristen K. White, on behalf of herself and others similarly situated, who hereby submits this Memorandum in Support of Final Approval of Class Settlement.

INTRODUCTION AND PROCEDURAL HISTORY

Pending before the Court for its final approval is the parties' Settlement Agreement. By the terms of this Settlement Agreement, all classmembers will receive 90% of the maximum amount of statutory damages which they could have won at trial, for each and every violation at issue in this action. under the provisions of the Fair Credit Reporting Act (FCRA, 15 U.S.C. 1681, *et seq.*).

This matter has been hotly contested since its filing, in December, 1999. Plaintiffs won class certification of their claims in May, 2001, which decision was granted interlocutory review by

the Fifth Circuit Court of Appeals under Federal Rule of Civil Procedure 23(f). The class certification was vacated by the Fifth Circuit due to an inadequate class definition. The district court again granted class certification to a re-defined class in August, 2002. This second class certification decision was again granted interlocutory review by the Fifth Circuit Court of Appeals under Fed. R. Civ. P. 23(f), and the class certification was upheld. The parties filed motions for summary judgment on liability and damages issues, which were heard by the Court and were pending for decision when this matter was settled in late September, 2004, less than a month before the scheduled trial date.

    This Court gave preliminary approval to the proposed Settlement Agreement in September, 2004. The Settlement Agreement provided that classmembers would receive payment of the sum of $900 for each and every FCRA violation that is the subject of this action.

    The Settlement Agreement further provided that attorney's fees would be paid to Class Counsel by the defendants, separately from and in addition to the settlement fund to be paid to the class members. However, the Settlement Agreement did not provide for any specific amount of attorney's fees to be awarded to the Class Counsel, . Rather, the Settlement Agreement provided that attorney's fees to Class Counsel would be determined by the Court, by contested motion, with plaintiffs and defendants each retaining the right to seek appellate review of the district court's fee decision. The Settlement Agreement further provides that payments to class members shall not be delayed by any dispute among the parties relating solely to the amount of attorney's fees awarded to Class Counsel. Thus, negotiation of the recovery to the classmembers, which as noted above, is 90% of the *maximum* they could have obtained at trial, was not in any way influenced by the amount of attorney's fees to be paid by defendants to Class Counsel.

2

The district court referred the determination of Class Counsel's attorney's fees and costs to a Magistrate Judge. The Magistrate rendered his decision more than six months after the referral and submission of Class Counsel's fee application (which is the reason for the year-long delay in distributing funds to the classmembers, because it was necessary to include the amount of Class Counsel's fee award in the notice of settlement published to the classmembers).

Less than a week after submitting his decision, following formal Objection filed by Class Counsel, the Magistrate determined that he had erred, withdrew his fee opinion, and recused himself from this matter.

The district court then withdrew the referral of Class Counsel's fee application and ordered that the court would decide the fee issue anew, but without consideration of Class Counsel's Objection, or any other papers or evidence except those which were originally considered by the Magistrate (leaving intact objected-to preliminary rulings by the Magistrate, as well as the findings which were the subject of Class Counsel's not-to-be-considered Objection). The district court's opinion with respect to Class Counsel's award of fees was essentially the same in all respects as the Magistrate's (because it was based on the same findings and rulings, which plaintiff had objected to as erroneous). This left to Class Counsel the three possibilities of objecting to the district court's decision, and/or appealing to the Fifth Circuit, or resolving the separate fee matter by agreement. Class Counsel and defendants chose the latter option.

A Supplemental Settlement Agreement was then agreed-to by the parties and approved by the Court. The Supplemental Agreement provides that the Imperial defendants shall pay the sum of $50,000 in attorney's fees to Class Counsel, and the Equifax defendants shall pay the sum of $372,975.76 in attorney's fees to Class Counsel.

Notice of the Supplemental Settlement Agreement, including the date, time and location of the Fairness Hearing (then scheduled to take place October 5, 2005), and information pertaining to the right to object, the procedures and deadlines therefore, and the right to obtain individual counsel was mailed to class members on or before August 27, 2005. Hurricane Katrina and its aftermath caused the Fairness Hearing to be delayed and rescheduled.

An additional Notice of the Supplemental Settlement Agreement, including the date, time and location of the Fairness Hearing (re-scheduled to take place November 30, 2005), and information pertaining to the right to object, the procedures and deadlines therefore, and the right to obtain individual counsel was mailed to class members on or before October 19, 2005.

Class Counsel have received **no objections** at all, from any person, in response to either Notice mailed to classmembers.

## LEGAL STANDARDS APPLICABLE TO APPROVAL OF CLASS SETTLEMENTS

A class action cannot be settled without the approval of the court. Fed.R.Civ.P.23(e)(1)(A). "A district court has discretion to approve a class-action settlement under *Rule 23(e)* if the settlement is fair, adequate, and reasonable." *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004), citing *Parker v. Anderson, 667 F.2d 1204, 1208-09 (5th Cir. Unit A 1982)*. "The district court's exercise of discretion is to be tested by inquiries that ensure that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression." *Ayers,* 358 F. 3d at *368-69*, citing *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983).

The Fifth Circuit has identified six key factors (the "Reed" or "Parker" factors) to be considered in approval settlement of a class action:

> (1) whether the settlement was the product of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the factual and legal obstacles to prevailing on the merits;
> (5) the possible range of recovery and the certainty of damages; and
> (6) the respective opinions of the participants, including class counsel, class representatives, and absent class members.
>
> Reed v. General Motors Corp., 703 F.2d 170, 172 (5th Cir. 1983); Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir.), cert. denied, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982); see also, *Ayers*, *supra*.

"The gravamen of an approvable proposed settlement is that it be "fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron*, 394 F.3d 296, 301 (5th Cir. 2004), citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1997).

The six "Reed" factors are addressed *seriatim* below.

**(1)    Whether The Settlement Is The Product Of Fraud Or Collusion**

It is clear that the settlement in this action *was not* the product of fraud or collusion. The classmembers in the action shall obtain a full 90% of the *maximum* statutory damages which they could have obtained at trial, for each and every violation (rather than per consumer, as the defendants argued the damages should be awarded). Further, attorney's fees to Class Counsel were not negotiated as part of the Settlement Agreement and Supplemental Settlement Agreement (hereinafter "Settlement Agreement"), but instead were determined by the Court, with the parties retaining the right to seek review of the district court's fee decision. The Agreement included the additional provision, for the class members' benefit, that any dispute among the parties relating to the attorney's fee/costs decision shall not delay payments to the class members. It is clear that the terms of the Settlement Agreement were negotiated at arms' length, for the sole benefit of the class

members, during a lengthy settlement conference with a Magistrate Judge conducted only shortly before trial.

(2)     **The Complexity, Expense, and Likely Duration Of The Litigation**

By the terms of the settlement, the class members obtain 90% of the *most* in statutory damages that they could have obtained at trial. Under the provisions of 15 U.S.C. 1681n of the FCRA, punitive damages are awarded only at the district court's discretion–and the presiding district judge stated, in open court at the hearing of the parties' motions for summary judgment, that he did not believe this matter was one in which punitive damages were appropriate.

Therefore, considering the novel claims in the action, the complexity of the proof, and the expense of trial, as well as the likely duration of the litigation, including appellate review, it is obvious that the class members have obtained an excellent settlement, that the district court is well-justified in approving.

(3)     **The Stage Of The Proceedings And Amount Of Discovery Completed**

The Settlement Agreement was reached less than a month before trial, after four full years of hotly contested litigation. This matter went to the Fifth Circuit twice on interlocutory appeals. Discovery was extensive and had been completed. Motions for summary judgment on both liability and damages issues had been filed by both sides, and argued, and were pending for decision. There had been not one but two previous, unsuccessful settlement conferences before settlement was reached, at the third conference, only weeks before trial. This matter was certainly ripe for settlement, when the Settlement Agreement was reached.

**The Factual And Legal Obstacles To Prevailing On The Merits**

The claims in this action were novel claims. Thus, there were legal obstacles to prevailing on the merits, as there always are in novel claims. For instance, defendants argued that the statutory damages provided by §1681n of the FCRA were a "per consumer" and not a "per violation" penalty. With respect to punitive damages, where these are awarded at the court's discretion under §1681n, the presiding district judge stated in open court that he did not believe this matter was one in which an award of statutory damages was appropriate. Class Counsel believe that they would have prevailed at trial, but also believe that it is a good settlement which produces 90% of the *highest* statutory damages award which could have been obtained by the class members at trial, *for each and every violation*, without the cost of the trial and without the additional cost and inevitable delay of appellate review of the results of the trial.

(4)     **The Possible Range Of Recovery And The Certainty Of Damages**

As noted above, the class members obtain under the settlement agreement 90% of the *most* that they could have obtained at trial, for each and every violation. The results of a jury trial are never certain and thus, the minimal 10% discount in the settlement agreement, subtracted from the *maximum possible recovery* that the class members could have obtained at trial, is a good and justifiable bargain by any trial lawyer's reckoning.

(5)     **The Respective Opinions Of The Participants**

Class Counsel believe this to be a good settlement, or they would not have agreed to it. This is evidenced by the fact that twice before, at earlier settlement conferences, Class Counsel turned down offers which they believed to be inadequate–even when the class certification decision had been granted interlocutory review by the Fifth Circuit. Put simply, Class Counsel held out for the best bargain they could get for the class members, and they got it.

There have been two separate mailings to the class members of the Notice of Settlement, due to the delay of the first scheduled Fairness Hearing resulting from Hurricane Katrina. Each Notice contained detailed information regarding the procedures and deadlines for objecting. While class counsel have received numerous letters from class members indicating their desire to participate in the settlement, **there has been no objection received from any class member or other person.** The class representative, also, approves of the settlement and has stated her opinion that her counsel have done a good job for her and her fellow class members.

CONCLUSION

Considering the foregoing, and specifically the six "Reed" factors which the Fifth Circuit looks to in reviewing the fairness and adequacy of a class settlement, it is obvious that the proposed settlement in this action is fair, adequate, and not the product of fraud or collusion. Plaintiffs therefore respectfully suggest that the Settlement Agreement and Supplemental Settlement Agreement collectively be granted the approval of this Honorable Court.

Respectfully submitted,

/s/ Dawn Adams Wheelahan

**DAWN ADAMS WHEELAHAN (19263)**
650 Poydras Street, suite 1550
New Orleans, Louisiana 70130
Telephone:    504-522-0495
Telecopy:     504-581-1624
**Temporary Office:**
17 Woodstone Square
Austin, Texas   78703
Telephone: 512.689.1153
Facsimile: 512.628.3149
dwheelahan@aol.com

### Certificate of Service

Undersigned counsel hereby certifies that a copy of the foregoing has been forwarded to all counsel of record by electronic mail transmission this 21st day of November, 2005.

/s/ Dawn Adams Wheelahan
_____
**DAWN ADAMS WHEELAHAN**